# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1741

_____

FA ND Chev, LLC; FA ND Sub, LLC

*Plaintiffs - Appellants*

BAPTKO, Inc.

*Plaintiff - Appellee*

v.

Robert Kupper

*Defendant - Appellee*

Bismarck Motor Company; BMC Marine, LLC, doing business as Moritz Sport & Marine

*Defendants*

v.

Foundation Automotive Corp., an Alberta Corporation

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Western

Submitted: March 19, 2026
Filed: August 4, 2026
_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Foundation Automotive Corp. purchased two car dealerships from BAPTKO, Inc. After the sale, the commercial relationship between the parties soured, leading to this consolidated lawsuit between "the Foundation parties"—which consist of Foundation Automotive Corp.; FA ND CHEV, LLC; and FA ND SUB, LLC—and "the Kupper parties"—which consist of Robert Kupper; BAPTKO, Inc.; Bismarck Motor Company; and BMC Marine, LLC. The district court[1] granted partial summary judgment to the Kupper parties and held a jury trial where the jury found in favor of the Kupper parties on the remaining issues. The Foundation parties appeal, challenging the district court's partial grant of summary judgment, conduct during the trial, evidentiary rulings, and award of attorney's fees to BAPTKO. We affirm.

## I. Background

As of 2018, Robert Kupper wholly owned BAPTKO,[2] which in turn wholly owned both a Subaru dealership and a Chevrolet dealership in North Dakota. In 2018, BAPTKO entered an asset purchase agreement ("the agreement") to sell these dealerships to Foundation Automotive Corp. The parties amended the agreement twice before the transaction closed.

_____

[1]The Honorable Daniel M. Traynor, then United States District Judge for the District of North Dakota, now United States Circuit Judge for the Eighth Circuit.

[2]BAPTKO was formerly known as Kupper Chevrolet.

-2-

As amended, the agreement included several promises by the parties that are relevant to this appeal. The first, what we will call the "inventory management" obligation, concerned BAPTKO's management of the dealerships' inventory between the signing of the agreement and formal closing of the deal. Specifically, BAPTKO promised (1) to "keep all ratios, including, but not limited to inventory levels, in accordance with a 12-month rolling average"; (2) to "operate its business in the ordinary course" and "use its best efforts to preserve its Dealerships' operations so that Buyer will obtain the benefits intended to be afforded by this Agreement"; and (3) to not engage in any inventory management practices that constituted "material changes in the customary or historic methods of operations" of the business prior to closing.

Second, in what we will call the "earnout payments" provision, Foundation Automotive Corp. agreed to make annual earnout payments to BAPTKO if the dealerships satisfied "mutually agreed upon . . . performance measures, including, but not limited to, reaching a normalized EBT [(Earnings Before Tax)] threshold target of $2,500,000 each calendar year." The Foundation parties do not dispute that the dealerships' performance corresponded to a total earnout obligation of $3 million.

Third, in what we will call the "attorney's fees" provision, the parties agreed that "in any proceeding or other attempt to enforce, construe or to determine the validity of this Agreement or any Related Agreement, the nonprevailing Party will pay the reasonable expenses of the prevailing Party, including reasonable attorneys' fees and costs." The agreement defined "Party" as either BAPTKO, Foundation Automotive Corp., or Foundation Automotive Corp.'s assigns. In June 2019, Foundation Automotive Corp. assigned its rights under the agreement to two new limited liability companies: FA ND CHEV, which was assigned the rights and obligations pertaining to the Chevrolet dealership, and FA ND SUB, which was assigned the rights and obligations pertaining to the Subaru dealership.

Shortly after the deal closed and the dealerships changed hands, the business relationship between the parties collapsed. On July 31, 2020, FA ND CHEV and FA ND SUB sued Kupper, Bismarck Motor Company, and BMC Marine for, among other things, breach of the agreement's non-compete provision and tortious interference in their relationship with their employees. In response, BAPTKO sued the Foundation parties for breach of the earnout payments provision, alleging that the Foundation parties had failed to make required earnout payments despite the fact that both dealerships had met the specified EBT targets. The Foundation parties then filed counterclaims against BAPTKO for breach of contract, alleging, in part, that BAPTKO had failed to maintain sufficient inventory in the dealerships prior to closing pursuant to the inventory management obligation. The district court consolidated these cases. *See* Fed. R. Civ. P. 42(a).

Each of the Kupper parties moved for summary judgment on all outstanding issues. In August 2024, the district court granted the Kupper parties partial summary judgment on their earnout payments claim, finding that "the Foundation Parties were required to make the Earnout Payments" in 2020 and 2021 and "failed to do so." However, the district court denied summary judgment on the issue of damages stemming from the Foundation parties' breach, finding that their breach-of-contract counterclaim raised factual disputes regarding how much they "w[ould] ultimately have to pay for their breach." In the same order, the district court also dismissed nearly all of the Foundation parties' affirmative claims against the Kupper parties. The Foundation parties filed a motion for clarification and reconsideration, in which they conceded that they had not made the earnout payments as required by the agreement. Nonetheless, they argued that BAPTKO had breached the agreement first, including by failing to adhere to the inventory management obligation, and that, therefore, the Foundation parties were excused from making any earnout payments as a matter of law. The district court disagreed and—two months before trial— issued a second order, where it reiterated its previous conclusion that the Foundation parties' breach claim related to damages but did not relieve them of their obligations under the earnout payments provision. Accordingly, the district court emphasized

that there was "no question of fact for the jury to decide whether [the] F[oundation] Parties breach[ed] the contract."

Just before trial began, the Kupper parties asked the district court whether it would instruct the jury that it had granted them summary judgment on the earnout payments provision issue. In response, the Foundation parties argued that the district court had left open the issues of breach and damages and explained that they intended to argue that the Kupper parties' prior material breaches excused them from making any earnout payments. The district court once again told the Foundation parties that it had granted summary judgment on the earnout payments issue and the Foundation parties could not argue this total excuse of performance defense and had to argue a damages offset instead. The district court left the jury instruction issue to be decided after the presentation of evidence but ruled that the Kupper parties could reference the summary judgment ruling in front of the jury. During this colloquy and continuing during trial, the district court made comments outside the presence of the jury that the Foundation parties characterize as critical. For example, at one point, the district court interrupted their counsel to note that it had already denied their motion for reconsideration and later referred to their approach to certain evidentiary issues as "monkey business."

During trial, the Foundation parties called Derek Slemko, the Chief Financial Officer of Foundation Automotive Corp., to testify as the corporate representative for Foundation Automotive Corp. During his examination, Slemko testified that the Foundation parties lacked access to certain data concerning the inventory at the dealerships prior to the closing of the parties' deal. The Kupper parties objected to this testimony. The district court overruled their objection and then asked Slemko several follow-up questions on the availability of the inventory data. During this colloquy, the district court repeatedly admonished Slemko for failing to provide direct answers. For example, it told Slemko in front of the jury that "[y]ou need to listen to my question and answer it," "What did you know? Answer my question," and "Mr. Slemko, answer questions when you're asked." After Slemko replied that he did not know whether Foundation Automotive Corp had access to the relevant

inventory data before the signing of the agreement, the district court instructed the jury that "[y]ou are to put out of your mind his testimony that he could not access the information because he didn't know it at the time."

The Kupper parties also objected to the Foundation parties' calling of Ginger Knutsen as an expert witness to testify, in part, that a reduced inventory level in the Subaru dealership would have reduced the dealership's overall value. The Kupper parties argued that Knutsen's testimony on that issue lacked relevance and a reliable foundation, arguing that no evidence had been presented indicating an affirmative decision by Kupper to reduce the Subaru dealership's inventory levels. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) ("[T]he Rules of Evidence—especially Rule 702—do assign the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). The district court then asked the Foundation parties to identify trial evidence supporting their claims regarding a reduction in Subaru inventory. The Foundation parties pointed to testimony from Slemko and financial statements in the record suggesting inventory at the Subaru dealership declined after the closing of the deal. Nonetheless, the district court rejected that this evidence supplied a sufficient foundation for Knutsen's planned testimony, noting that it failed to establish that Kupper "had anything to do with the reduced inventory numbers at the Subaru store or that he took any actions to do so." The district court then allowed Knutsen to testify but gave the jury a limiting instruction. It explained that while the Foundation parties had not finished presenting evidence, "*thus far* there is no factual witness that would support a claim that there was a reduction in Subaru numbers that were caused by Robert Kupper" (emphasis added). Accordingly, the district court instructed the jury to disregard Knutsen's testimony as to the Subaru dealership and to disregard any testimony that failed to distinguish between the Subaru and Chevrolet dealerships.

At the conclusion of trial, the district court instructed the jury that it had granted summary judgment to the Kupper parties on their earnout payments claim and explained that they were therefore entitled to $3 million plus prejudgment

interest from the Foundation parties. It then instructed the jury to consider whether the Foundation parties had proven that BAPTKO had breached the agreement and the extent of damages caused by any breach. It explained that any such damages "will act as an offset" against the damages owed by the Foundation parties to the Kupper parties. The jury found that BAPTKO had not breached the agreement.

After trial, the district court granted the Kupper parties' motion for attorneys' fees and litigation costs based on the attorney's fees provision. It determined that BAPTKO could recover fees and costs it paid for its own defense as well as those that it paid for the personal defense of Kupper, because BAPTKO necessarily incurred expenses for Kupper's defense as a part of its own efforts to enforce the agreement. The district court calculated its attorneys' fees award of $1,085,186.44 by first determining a lodestar amount and then applying a 10% reduction due to the "confusing" and "unhelpful" bookkeeping of the Kupper parties' attorneys. The district court then denied the Foundation parties' renewed motion for judgment as a matter of law and motion for a new trial. As to the former, the district court refused to consider the Foundation parties' argument that the Kupper parties had failed to prove which of the Foundation parties were obligated to make earnout payments because they had not raised that argument in their original motion. As to the latter, the district court rejected the Foundation parties' arguments that the jury instructions were improper, that the district court's conduct during the trial was prejudicial, and that the jury's verdict was against the weight of the evidence.

The Foundation parties appeal, arguing that the district court (1) erred in granting the Kupper parties summary judgment concerning the breach of the earnout payments provision, (2) erred in imposing joint and several liability on the Foundation parties for breach of the earnout payments provision, (3) unfairly prejudiced the Foundation parties and abused its discretion by evincing hostility toward the Foundation parties, improperly limiting evidence concerning inventory at the Subaru dealership, and providing erroneous jury instructions, and (4) abused its discretion in awarding the Kupper parties roughly $1.09 million in attorneys' fees.

## II. Analysis

In this diversity case, we "apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The parties agree that North Dakota law applies to all non-procedural issues on appeal.

### A. Grant of Summary Judgment on Earnout Payments Provision

We first address the argument that the district court improperly granted summary judgment on the earnout payments provision. We review a district court's grant of summary judgment *de novo*. *Green Plains Otter Tail, LLC v. Pro-Env't Inc.*, 953 F.3d 541, 545 (8th Cir. 2020). "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In making this determination, we view the record in the light most favorable to the nonmoving party. *Id*.

The Foundation parties concede that they never made any earnout payments to the Kupper parties even though the dealerships met the earnings targets specified in the agreement. Nonetheless, the Foundation parties argue that the district court erred in granting summary judgment because the Kupper parties' prior material breaches of the agreement excused the Foundation parties from making any earnout payments. While the Foundation parties characterize this argument as an "excuse of performance" defense, North Dakota courts appear to call this doctrine "failure of consideration." *See Check Control, Inc. v. Shepherd*, 462 N.W.2d 644, 647 (N.D. 1990). Under North Dakota law, "[a] total failure of consideration will occur where a party has failed to perform a substantial part of its obligation, so as to defeat the very object of the agreement." *Id.* "The remedy for a total failure of consideration is to excuse the non-breaching party from performance of its obligations under the agreement." *Id.* On the other hand, "[a] partial failure of consideration occurs when

-8-

there has been an insubstantial breach that leaves sufficient consideration for sustaining the contract." *Id*. And for a partial failure of consideration, "the proper remedy is to grant appropriate damages to the non-breaching party." *Id.* The Foundation parties essentially contend that the district court erred in regarding BAPTKO's alleged breaches of the agreement as no more than partial failures of consideration that did not excuse performance of the earnout payment provision. As such, the Foundation parties argue that the district court improperly required that they present their breach claims to the jury and seek damages as an "offset" against the earnout damages already awarded to the Kupper parties.

The district court properly granted partial summary judgment to the Kupper parties because no reasonable jury could conclude that any of their alleged breaches "defeat[ed] the very object of the agreement." *See id.* The Foundation parties alleged that the Kupper parties breached the agreement in several ways, including by failing to maintain promised inventory levels. However, regardless of the veracity of these claims, the Foundation parties' defense fails because the Kupper parties indisputably delivered functioning dealerships: both dealerships met the specified EBT targets during the closing period and for each quarter thereafter, entitling the Kupper parties to the $3 million in earnout payments outlined in the agreement. Because the object of the agreement was the transfer of these dealerships and because this object was reasonably achieved, none of the alleged breaches could have defeated "the very object of the agreement." *See id*. Thus, the district court properly granted summary judgment on the earnout payments provision issue.[3]

---

[3]The Foundation parties argue that even if summary judgment was proper, the district court nonetheless prejudiced them by issuing its decision at the last moment before trial. But the district court did no such thing. It issued its last written order two months before trial. Just like the first order—issued over one month earlier— that order stated that the trial would be limited to "[h]ow much the [alleged] breach of contract offsets the Foundation Parties' obligation to pay BAPTKO under the Earnout Provision." As the district court elaborated, the Foundation parties could still present evidence of BAPTKO's alleged breaches when arguing for an offset. The Foundation parties had plenty of time to prepare for trial and cannot fairly claim

## B. Joint and Several Liability

The Foundation parties also argue that the district court should not have imposed joint and several liability on all three Foundation parties for breach of the earnout payment provision and that, absent the ability to impose such liability, the district court could not have entered judgment against any party. Specifically, they contend that FA ND CHEV and FA ND SUB cannot be held liable for the overall earnout obligations because they were only assigned obligations relating to each designated dealership and because joint and several liability for contracts does not exist in North Dakota law. The joint-and-several liability argument is waived because the Foundation parties did not present it in a timely fashion to the district court. The Foundation parties initially raised this issue in their renewed motion for judgment as a matter of law. Such motions are not an appropriate time to raise an issue that defeats liability for the first time. *See Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015). The Foundation parties protest that they raised the issue in their motion for reconsideration of summary judgment and in a pretrial colloquy with the district court. We have reviewed the motion and the portion of the transcript they cite and found no mention of these issues. Accordingly, the Foundation parties have waived this argument.

## C. The District Court's Conduct, Trial Rulings, and Jury Instructions

### 1. Prejudicial Comments at Trial

We next turn to the argument that district court's comments at trial constituted judicial misconduct. We review a district court's statements during trial for an abuse of discretion if the issue is preserved by a timely objection and for plain error if it is not. *Rush v. Smith*, 56 F.3d 918, 922 (8th Cir. 1995) (en banc). "An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless

---

that the impact of the district court's summary judgment ruling on the scope of issues before the jury came as a surprise.

it appears that the conduct complained of was intended or calculated to disparage [a party] in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." *La Barge Water Well Supply Co. v. United States*, 325 F.2d 798, 802 (8th Cir. 1963). Here, the Foundation parties objected to the district court's comments, but the Kupper parties dispute whether that objection was timely. Because the district court did not abuse its discretion, much less plainly err, we need not decide whether the Foundations parties made a timely objection.

The Foundation parties argue that the district court made comments disparaging them, their counsel, and their witness Slemko that cumulatively prejudiced the jury and thus require a new trial. However, as the Foundation parties concede, almost all the allegedly disparaging comments were made outside the presence of the jury. Comments made outside the presence of the jury generally do not prejudice the jury. *See United States v. Turner*, 975 F.2d 490, 493 (8th Cir. 1992) (discounting the prejudicial effect of the "fair number of the arguments [that] occurred outside the jury's presence"). We cannot say any of these negative comments outside the presence of the jury require a new trial either in isolation or collectively.

The Foundation parties point to only two comments that the district court made in the presence of the jury: its directions to Foundation Automotive Corp.'s corporate representative, Derek Slemko, that he should answer questions when asked and its follow-up instruction to the jury that they should disregard his "testimony that he could not access the information because he didn't know it at the time." Even assuming they were improper, these comments were isolated and far less prejudicial than those that we have found warranted a new trial. For example, in *United States v. Singer*, 710 F.2d 431, 436 (8th Cir. 1983), we ordered a new trial because the judge improperly "injected himself into the trial throughout the entire proceeding." And in *Rush*, we remanded for a new trial in a civil rights case brought by an African American plaintiff because the judge made a "racially polarizing remark" to an all-white jury that disparaged the credibility of the plaintiff's witnesses. 56 F.3d at 923. We observed that although, generally, "a few improper comments are not necessarily

-11-

enough to require reversal," this may not be true when "a trial judge makes comments in the presence of the jury that appeal to bias or prejudice." *Id.* at 922-23. The comments here did not have the same character or effect as those in *Singer* or *Rush*. As the Foundation parties acknowledged at oral argument, the district court did not make a practice of directing examination or commenting on witnesses. And the district court's comment to Slemko did not directly disparage him nor "appeal to bias or prejudice." *See id.* Accordingly, the district court did not abuse its discretion by making those comments.

## *2. Knutsen's Expert Testimony*

We next address the Foundation parties' challenge to the district court's instructions limiting the jury's reliance on Knutsen's testimony. We review a district court's decision to exclude or limit an expert's testimony for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). "A district court by definition abuses its discretion when it makes an error of law." *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1070 (8th Cir. 2000). An expert witness's testimony requires some foundation in record evidence to support the opinions the expert offers. *See Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999) ("[Expert's] qualification as a fire investigator did not give him free rein to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support.").

Here, the Foundation parties argue that the district court made a legal error by misinterpreting the agreement to require some evidence of a decision by Kupper that resulted in a decline of the Subaru dealership's inventory. The agreement required BAPTKO to "keep . . . inventory levels . . . in accordance with a 12-month rolling average." According to the Foundation parties, any decline in inventory level below that average before closure of the deal constitutes a breach of this provision. Thus, they argue—without reference to the agreement's text—that by requiring evidence of an affirmative decision by Kupper that caused such a decline, the district court

effectively required them to prove an intentional breach.[4]  Because the district court limited Knutsen's testimony for lack of foundation, the Foundation parties argue that this alleged legal error poisoned the district court's evidentiary ruling.  The Kupper parties respond that the agreement requires BAPTKO to make management decisions regarding the inventory in accordance with both its prior practice and the 12-month rolling average, and therefore, absent evidence of a decision, there can be no breach.  Under North Dakota law, we "construe contractual agreements to give effect to the parties' intent, which, if possible, must be ascertained from the writing as a whole.  The clear and explicit language of a contract governs its interpretation and words are construed in their ordinary sense."  *In re Estate of Littlejohn*, 698 N.W.2d 923, 925-26 (N.D. 2005) (citation modified); *see also* N.D. Cent. Code § 9-07-09.  The parties have not identified a North Dakota case interpreting a contract with similar language, and we are aware of none.

We discern no legal error in the district court's instructions to the jury limiting Knutsen's testimony.  We agree with the district court that the Foundation parties needed to provide some evidence of a decision by Kupper that reduced the Subaru dealership's inventory.  The agreement does not specify a precise inventory level that needed to exist at closing.  Rather, the words "keep . . . in accordance with" create a duty to manage the inventory in light of the "rolling average."  If the agreement created a strict requirement to ensure that inventory levels met or exceeded this rolling average, it would have used language like "at or above" or some other phrase establishing a specific level of inventory.  It does not.  Rather, the agreement imposes a duty to manage the inventory in a specific way—that is, in accordance with the rolling average.  This conclusion is further bolstered by the fact the inventory management provision appears in a section titled "Operation of Dealerships," which contains a list of promises requiring BAPTKO to continue managing the dealership in the same way it did before entering the agreement and in accordance with the rolling average.  The listed promises are overlapping and thus

---

[4]The Foundation parties agree that only Kupper had any "decision-making authority" at BAPTKO and agree we should treat him interchangeably with BAPTKO with respect to this issue.

-13-

it makes sense that the promise to "keep . . . inventory . . . in accordance with" the rolling average would be of the same type as the others in the list. *See in re Estate of Littlejohn*, 698 N.W. at 925-26 (writing must be construed "as a whole"). Moreover, the section titled "Vehicle Inventories" has no mention of a required minimum inventory. Finally, contrary to the Foundation parties' assertions, we note that the district court's interpretation of the agreement does not require the breach to be intentional: any decision by BAPTKO that caused the inventory levels to deviate from the 12-month rolling average, even if that consequence was unintentional, might have breached the contract. Altogether, the district court did not misinterpret the contract. Accordingly, we conclude that the district court did not abuse its discretion by limiting Knutsen's testimony. *See Retz*, 741 F.3d at 917.

### 3. *Jury Instructions*

The Foundation parties also raise three alleged errors regarding the final jury instructions. "Typically, we review jury instructions for an abuse of discretion." *Hall v. BNSF Railway Co.*, 958 F.3d 672, 674 (8th Cir. 2020). First, the Foundation parties argue that the district court's decision to inform the jury that it had granted summary judgment on the dispute regarding the earnout payments provision was unfairly prejudicial. We disagree. In addition to being accurate, this information did not conflict with the Foundation parties' factual theory of the case: they had refused to make the earnout payments because the Kupper parties had breached first. The Foundation parties have not identified any prior cases in which we or any other court vacated a jury verdict for this reason. The district court did not abuse its discretion.[5]

Second, the Foundation parties argue that the district court should have instructed the jury that the agreement was conditioned on complete performance, meaning even an insubstantial breach by BAPTKO should have excused the

---

[5]The Foundation parties also object to the district court's decision to permit the Kupper parties to reference the grant of summary judgment during trial. There, too, the district court did not abuse its discretion.

Foundation parties' performance. The jury verdict has mooted this argument. The district court permitted the Foundation parties to argue that BAPTKO had breached the agreement. The jury found BAPTKO completely performed its obligations under the agreement. Therefore, we need not and do not consider whether the agreement was conditioned on complete performance by BAPTKO.

Finally, the Foundation parties argue that the final jury instructions were legally erroneous because they repeated the legal errors that the district court committed when it granted summary judgment on the earnout payments provision. As we explained above, the district court did not make a legal error in granting summary judgment and was correct to instruct the jury consistently with this prior ruling.

In sum, the district court did not abuse its discretion when issuing the final jury instructions.

### C. Attorney's Fees and Costs

We next address the award of attorney's fees and litigation costs to BAPTKO. The Foundation parties make two challenges to the district court's award: first, that the agreement does not authorize any award of attorney's fees costs incurred in the defense of Kupper, who was a non-party to the agreement; and second, that the attorney's fee award reflects an abuse of discretion.[6] We review legal issues—including whether the agreement allows the award—*de novo*, and all other issues for an abuse of discretion. *See Associated Elec. Coop., Inc. v. Sw. Power Pool, Inc.*, 111 F.4th 914, 917 (8th Cir. 2024).

---

[6]The Foundation parties also state in passing that they challenge the district court's award of costs and the rates it used to calculate the lodestar amount but fail to develop these points in their opening brief. Therefore, they have waived these arguments. *See Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1075 (8th Cir. 2016).

First, the agreement permits awarding attorney's fees and costs incurred defending Kupper in his personal capacity. The Foundation parties argue that because the contract explicitly states that only certain entities, which do not include Kupper, are "Part[ies]," then the "reasonable expenses of the prevailing Party" cannot be read to include attorney's fees or other costs paid for defending Kupper. We disagree. Again, they have not cited any North Dakota cases to support their position. The agreement permits an award of any reasonable expenses the prevailing "Party" incurs during "any proceeding or other attempt to enforce, construe, or to determine the validity of" the agreement. The agreement does not limit these expenses to those reasonable attorney's fees incurred defending an explicitly named "Party." We therefore agree with the district court that if BAPTKO reasonably and necessarily incurred the fees and costs for Kupper's defense as part of its effort to enforce the agreement, then the agreement permits their recovery. The district court determined that BAPTKO's efforts to enforce the contract "necessarily included" defending Kupper personally. The district court reached its decision after a thorough analysis of the record and in light of its deep familiarity with the case. The district court did not err in its interpretation of the contract and did not abuse its discretion in awarding attorney's fees and costs related to the defense of Kupper in his personal capacity.

Second, the district court's attorney's fee award did not reflect an abuse of discretion. The Foundation parties argue that the district court accepted an inflated "lodestar" fee estimate then improperly applied an "arbitrary" 10% blanket reduction to reach its final fee award. The district court applied this reduction because it found the bookkeeping of BAPTKO's attorneys substandard. The Foundation parties argue that the district court's process was improper because a district court must determine the exact number of reasonable hours and the exact reasonable rate. They characterize the district court's overall approach as "arbitrary" and as "a failure to exercise reasoned judgment." Again, we disagree. We have previously upheld a district court that took an identical approach to crafting a fee award in similar circumstances. *Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir. 1996) (approving "an across-the-board reduction in hours of 10%" because of "certain instances where the

-16-

documentation was simply not sufficient to make an intelligent determination as to whether the hours expended were in fact reasonable"); *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408, 420 (8th Cir. 2024) ("There is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor." (citation modified)).  In this case, as in *Jensen*, the district court carefully considered the evidence provided by the prevailing party and concluded a 10% reduction from its lodestar was appropriate.  "We see no abuse of discretion in that holding." *Id*.

### III. Conclusion

For the foregoing reasons, we affirm.

_____